# United States Court of Appeals for the Federal Circuit

03-1512

CAMPBELL PLASTICS ENGINEERING & MFG., INC.,

Appellant,

v.

Les Brownlee, ACTING SECRETARY OF THE ARMY,

Appellee.

Kyriacos Tsircou, Sheppard, Mullin, Richter & Hampton LLP, of Los Angeles, California, argued for appellant. With him on the brief was Gary A. Clark.

Domenique Kirchner, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Todd M. Hughes, Assistant Director. Of counsel on the brief was Craig S. Clarke, U.S. Army Legal Services Agency, of Arlington, Virginia.

Appealed from: Armed Services Board of Contract Appeals.

# United States Court of Appeals for the Federal Circuit

03-1512

CAMPBELL PLASTICS ENGINEERING & MFG., INC.,

Appellant,

v.

Les Brownlee,
ACTING SECRETARY OF THE ARMY,

Appellee.

_____

DECIDED:  November 10, 2004

_____

Before MICHEL, CLEVENGER, and DYK, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

Campbell Plastics Engineering & Mfg., Inc. ("Campbell Plastics") appeals the decision by the Armed Services Board of Contract Appeals ("ASBCA" or "Board") upholding an Administrative Contracting Officer's ("ACO's") demand for title to an invention developed pursuant to a contract between Campbell Plastics and the U.S. Army Chemical Research, Development and Engineering Center ("Army" or "government").  <u>See</u> <u>In re Campbell Plastics Eng'g & Mfg. Inc.</u>, ASBCA No. 53319 (Mar. 18, 2003).  Because we conclude that Campbell Plastics failed to comply with the invention disclosure provisions of the contract, we affirm.

I

On September 25, 1992, Campbell Plastics (named Venture Plastics, Inc., at the time) entered into a cost-plus-fixed-fee contract, DAAA15-92-C-0082, with the Army to develop certain components of an aircrew protective mask, as part of a program for small disadvantaged business concerns pursuant to section 8(a) of the Small Business Act, 15 U.S.C. § 637(a) (1988). See 13 C.F.R. § 124.1-.610 (1992) (implementing section 8(a) programs).

Section I of the contract incorporates numerous clauses from the Federal Acquisition Regulations ("FARs"), including a "Patent Rights—Retention by the Contractor" clause from 48 C.F.R. § 52.227-11 (1991) ("FAR 52.227-11") that requires a contractor to disclose any subject invention developed pursuant to a government contract and sets forth certain substantive requirements for doing so. The clause further provides that the government may obtain title if the contractor fails to disclose the invention within two months from the date upon which the inventor discloses it in writing to contractor personnel responsible for patent matters. Section I also incorporates from 48 C.F.R. § 252.227-7039 (1991) ("FAR 252.227-7039") a "Patents— Reporting of Subject Inventions" clause which requires the contractor to disclose subject inventions in interim reports furnished every twelve months and final reports furnished within three months after completion of the contracted work. Subsection H.11 of the contract, titled "Patent Rights Reports," requires the contractor to submit all "interim and final invention reports required by patent clause in Section I" on a "DD Form 882, Report of Inventions and Subcontracts."

On October 11, 1992, Mr. Richard Campbell, President of Campbell Plastics, submitted to the Army a DD Form 882 wherein he expressly stated "no inventions." At a post-award conference on November 17, an Army representative told Mr. Campbell that a DD form 882 was due at least once every twelve months from the date upon which the contract was awarded. Shortly thereafter, on December 14, Mr. Campbell faxed several handwritten drawings to Mr. Jeff Hofmann, an ACO Representative. One of the drawings identified a location for a "sonic weld or snap fit." Mr. Campbell's submission was the first in a series of progress reports and drawings submitted during Campbell Plastics's work under the contract that referenced sonic welding to varying degrees.

On December 19, 1992, Mr. Campbell faxed a handwritten letter to Mr. Hofmann seeking to "reopen the question of the sonic welding." The letter included an explanation of the advantages of sonic welding and the assembly concept. On January 20, 1993, Mr. Campbell provided Mr. Hofmann with two protective masks that had sonic-welded side ports. In a January 27 monthly progress report, Campbell Plastics noted, "We are also testing Sonic Welding the Kapton Film in a housing. This also has to be tested for leakage and tension." On February 11, Mr. Campbell faxed Mr. Hofmann a drawing of a side port having a sonic weld. In a monthly progress report submitted on March 2, Campbell Plastics identified the task of "[t]esting of Sonic Welding the Kapton film in a housing," and reported that sonic welding "looks viable." Campbell Plastics further reported that a "prototype mold is currently being fabricated to prove out the feasibility of sonic welding the Kapton Film and maintaining tension."

On March 19, 1993, Mr. Campbell faxed Mr. Hofmann a sketch of the side port voicemitter and the following note: "I am having this sketched up and a simple mold made to test Sonic Weld/Kapton Concept." On March 22 and 24, Mr. Campbell faxed various diagrams of the lens retaining system and the front voicemitter housing and speaking unit, and indicated that certain joints were to be sonic welded. In monthly progress reports dated April 29 and June 30, Campbell Plastics reported on its testing of the use of sonic welding. On July 8, Mr. Campbell faxed drawings of the lens retaining system to Mr. Hoffman and stated specifically that the assembly was sonic welded. On July 21 and August 5, Mr. Campbell submitted cost estimates and noted in each that the concept of sonic welding was "nearly complete."

On October 6, 1993, Mr. Joseph J. Stehlik, ACO, wrote to Mr. Campbell to remind him that an Interim Report of Inventions and Subcontracts, preferably on a DD Form 882, must be delivered at least every twelve months from the date of the contract, listing the subject inventions during the period and also certifying that the required procedures for identifying and disclosing subject inventions have been disclosed. In the letter, Mr. Stehlik requested that Campbell Plastics submit an interim report within ten days. On October 18, Mr. Campbell submitted a DD Form 882 but did not disclose an invention.

In a monthly progress report dated June 6, 1994, Campbell Plastics stated, "Eyelens Retaining System, Branson satisfied with Sonic Weld Concept – best under design restrictions." On September 15, Mr. Campbell submitted a DD Form 882 that again indicated that no invention had been developed under the contract. Campbell Plastics did not submit another DD Form 882 for the remainder of the contract period,

and it received no further request from the Army to do so. In monthly progress reports dated October 7 and November 8, Campbell Plastics reported continued work on the sonic welding process.

On February 7 and November 24, 1995, Mr. Campbell faxed Mr. Hofmann drawings that identified changes in the dimensions of the eyelens retaining system to facilitate sonic welding.

In June 1997, the Army published a report titled, "Design of the XM45 Chemical-Biological, Aircrew, Protective Mask." The report disclosed research conducted by the Army from October 1991 through July 1995, and referenced sonic welded components in the mask.

In August 1997, Campbell Plastics contacted an attorney who soon after drafted a patent application for a "Sonic Welded Gas Mask and Process." Campbell Plastics filed the application on October 9, 1997. The U.S. Patent and Trademark Office ("USPTO") made the application available to the Army for the limited purpose of making a secrecy determination pursuant to 35 U.S.C. § 181 (1994). Pursuant to the USPTO's request, the Army reviewed Campbell Plastics's application by January 30, 1998.

The patent application issued on April 20, 1999, as U.S. Patent No. 5,895,537 ("the '537 patent"). The '537 patent expressly reserved for the government a paid-up license and "the right in limited circumstances to require the patent owner to license others on reasonable terms as provided for by the terms of Contract No. DAAA15-92-C-0082 awarded by The Army." On April 28, Campbell Plastics notified the Army in writing of the '537 patent.

After an exchange of letters between the parties regarding the Army's claim to joint ownership of the subject invention, including one in which the Army admitted that it had, by June 1997, a report drafted by government employees that provided an enabling disclosure of the invention, the ACO ultimately concluded that Campbell Plastics forfeited title to the patent by failing to comply with FAR 52.227-11.

On March 14, 2001, Campbell Plastics appealed the ACO's decision. Both parties filed cross-motions for summary judgment. Though Campbell Plastics conceded in its motion that its disclosure was not in the form of a DD Form 882 as was required by the contract, Campbell Plastics argued that it disclosed all technical aspects of the invention to the Army and that the Army admittedly had an enabling disclosure of the subject invention by June 1997. Campbell Plastics furthermore argued that forfeiture is not favored by law, especially where the government suffered no genuine harm. In short, Campbell Plastics framed its failure to comply with the contract as one in form only, which should not result in the forfeiture of title to the subject invention.

In denying the appeal, the Board ruled that Campbell Plastics failed to satisfy its contractual obligation to inform the Army that it considered sonic welding to be an invention. The Board further ruled that any information the Army gleaned from its review of the patent application for secrecy determination purposes and its own June 1997 report was not provided by Campbell Plastics, and that forfeiture was appropriate under the circumstances. Finally, the Board recognized that FAR 52.227-11(d), which specifies when the government "may" obtain title to a subject invention, vests the Army with some discretion in determining whether to take title. The Board found, however,

that the Army had not abused its discretion.  Campbell Plastics now appeals the Board's decision.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) (2000).

## II

The Contract Disputes Act ("CDA"), 41 U.S.C. § 609(b) (2000), governs this court's review of Board decisions.  While the CDA provides for nondeferential review of the Board's legal conclusions, it specifies that the Board's factual findings shall be final and conclusive unless they are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence."  Id.

## III

Because we have never before defined a contractor's obligation to disclose a "subject invention" under FAR 52.227-11, this case presents a matter of first impression for this court.

In 1980, Congress passed the Bayh-Dole Act, 35 U.S.C. §§ 200-212, the statutory scheme from which FAR 52.227-11 arises.  With few exceptions, the Act allows nonprofit organizations and small business firms to elect to retain title to any invention by the contractor developed pursuant to a government contract.  For purposes of the Act, Congress has termed these inventions "subject inventions."  See 35 U.S.C. § 201(d)-(e) (1988) (defining an "invention" to mean "any invention or discovery that is or may be patentable," and "subject invention" to mean "any invention of the contractor conceived or first actually reduced to practice in the performance of work under a funding agreement").

Congress required that each government contract entered into pursuant to the Act shall contain provisions that require the contractor to "disclose each subject invention to the Federal agency within a reasonable time after it becomes known to contractor personnel responsible for the administration of patent matters, and that the Federal Government may receive title to any subject invention not disclosed to it within such time." 35 U.S.C. § 202(c)(1) (1988). The reasons for this are clear. Though the Act provides nonprofit organizations and small business firms the right to elect title to a subject invention, it also vests in the government the right to a paid-up license to practice the invention when the contractor elects to retain title, id. § 202(c)(4), and the right to receive title to the invention in the United States or any other country in which the contractor has not filed a patent application on the invention prior to any pertinent statutory bar date, id. § 202(c)(3). The disclosure provisions of section 202(c)(1) thus provide the government adequate means with which to protect these rights.

Subsection I.53 of Campbell Plastics's contract incorporated the clause "Patent Rights—Retention by the Contractor" of FAR 52.227-11, which obligates the contractor to disclose "subject inventions" to the government and sets forth both substantive and formal requirements for the disclosure. The clause states in relevant part:

(c) Invention disclosure, election of title, and filing of patent application by contractor.

(1) The Contractor will disclose each subject invention to the Federal agency within 2 months after the inventor discloses it in writing to Contractor personnel responsible for patent matters. The disclosure to the agency shall be in the form of a written report and shall identify the contract under which the invention was made and the inventor(s). It shall be sufficiently complete in technical detail to convey a clear understanding to the extent known at the time of the disclosure, of the nature, purpose, operation, and the

physical, chemical, biological or electrical characteristics of the invention. . . .

(d) Conditions when the government may obtain title. The Contractor will convey to the Federal agency, upon written request, title to any subject invention—

(1) If the Contractor fails to disclose or elect title to the subject invention within the times specified in paragraph (c) of this clause . . . .

FAR 52.227-11.

Subsection H.11 of Campbell Plastics's contract, titled "Patent Rights Reports," requires the contractor to submit all interim and final invention reports "required by patent clause in Section I" on a DD Form 882, "Report of Inventions and Subcontracts," and Campbell Plastics does not dispute that the DD Form 882 is the contractual means for disclosing subject inventions pursuant to FAR 52.227-11(c)(1).[1]  In addition to the disclosure requirements of FAR 52.227-11(c)(1), the form also requires a contractor to report the title of the invention, whether it elects to file a patent application in either the United States or a foreign country, and any foreign country so elected.

The language of the Patent Rights Reports clause and the incorporated FARs is clear and unambiguous.  It affords the government the opportunity to take title to any invention by the contractor that is or may be patentable and was conceived or first

---

[1]     How a contractor would disclose on a DD Form 882 the technical aspects of an invention in the detail required by FAR 52.227-11(c)(1) is not clear.  The questions on the form are not directed towards eliciting a disclosure of technical information, and the form itself certainly provides no extra space for such a disclosure.  In its brief, the Army states that "[a] written report describing the technical features of the invention must also be provided with the DD 882."  Though we find no support in the contract itself for the particular manner of disclosure proposed by the Army, we need not concern ourselves with the question.  Campbell Plastics admits that "[p]aragraph H.11 of the Contract . . . requires the written report [of FAR 52.227-11(c)(1)] to be submitted on DD Form 882."  It did not do so.

actually reduced to practice in the performance of work under the contract if the contractor fails to disclose on a DD Form 882 the technical aspects of the invention, the inventor and the contract under which the invention was developed, within two months of disclosing the invention to contractor personnel responsible for patent matters.

This plain-meaning interpretation of the contract is buttressed by the policy considerations behind the Bayh-Dole Act. While Congress clearly intended "to promote the commercialization and public availability of inventions made in the United States by United States industry and labor," and "to encourage maximum participation of small business firms in federally supported research and development efforts," 35 U.S.C. § 200 (2000), it also provided the government with certain aforementioned rights to the inventions and sought to ensure the safeguard of those rights by requiring government contractors to disclose subject inventions. See 35 U.S.C. § 202 (stating that each contract shall ensure that "the contractor disclose each subject invention to the Federal agency within a reasonable time after it becomes known to contractor personnel responsible for the administration of patent matters, and that the Federal Government may receive title to any subject invention not disclosed to it within such time"); id. § 200 (listing the protection of the government's rights in federally supported inventions as a policy objective). A single, written report containing the information required by FAR 52.227-11(c)(1) effectively provides such a safeguard.

Neither party disputes that Campbell Plastics first disclosed the method for fabricating a sonic welded gas mask to its patent counsel in August 1997, or that the method was indeed a "subject invention." At a minimum, then, the contract required Campbell Plastics to disclose on a DD Form 882 by October 1997, the technical

aspects of its method for fabricating a sonic welded gas mask, the inventor and the contract under which the invention was developed.[2]  Campbell Plastics admittedly did not do so, and instead indicated "no invention" and "none" on DD Form 882s that it did submit.

Campbell Plastics contends, however, that it continually disclosed all features of the invention throughout the contractual period.  While it is at least debatable whether the various progress reports and drawings Campbell Plastics submitted to the Army together convey a clear understanding of the nature, purpose and operation of the invention as well as the invention's physical, chemical, biological or electrical characteristics, we think the contract requirement of a single, easily identified form on which to disclose inventions is sound and needs to be strictly enforced.  If we were to find Campbell Plastics's style of disclosure sufficient, methods of disclosure could vary widely from case to case.  The government never would be sure of which piece of paper, or which oral statement, might be part of an overall invention disclosure.  But we do not so find.  The contract instead demands a single form for disclosure, which enables the contracting officials to direct the inventive aspects of the contract performance to the correct personnel in the agency for a determination of whether the government has an interest in the disclosed invention, and for the government to

---

[2]      Despite the requirement of FAR 252.227-7039 that it submit an interim report every twelve months, Campbell Plastics last submitted a DD Form 882 to the Army on September 15, 1994.  After that date, the Army never formally requested another DD Form 882.  We need not consider whether the Army waived the DD Form 882 requirement, however, because Campbell Plastics did not raise this issue before the Board.

determine how best to protect its interest. Sound policy is promoted by the rule of strict compliance with the method of disclosure demanded by the contract.

Because Campbell Plastics's piecemeal submissions do not adequately disclose the subject invention under the parties' contract, the government may take title to the invention pursuant to FAR 52.227-11(d). The arguments Campbell Plastics advances in an attempt to avoid application of that subsection are unavailing. Campbell Plastics argues that the subsection refers only to the timing of the disclosure, and not to the substance of the disclosure itself. Under Campbell Plastics's interpretation, however, it could disclose anything under the sun in any form whatsoever and still avoid forfeiture, so long as it does so within two months of disclosing the subject invention to its personnel responsible for patent matters.

Campbell Plastics also argues that the government's possession of an enabling disclosure of the subject invention by June 1997, and its review of the patent application for secrecy determination purposes, satisfied Campbell Plastics's obligations under the contract. But whatever information the government had regarding the invention, it did not get it from Campbell Plastics in the form of a proper invention disclosure.

Finally, Campbell Plastics makes much of the fact that "forfeiture" is disfavored at common law. The language of the contract is very clear, as is the statutory authority behind FAR 52.227-11, which allows the government to take title to any invention not properly disclosed. The Board was correct in holding that Campbell Plastics afforded the government the opportunity to take title to its patent because Campbell Plastics failed to disclose the invention in the manner specified in the contract. Campbell Plastics cannot use the proposition that forfeiture is a disfavored remedy as an absolute

shield to thwart the government's right to enforce the terms of the contract Campbell Plastics willingly signed.

IV

The Board determined that because FAR 52.227-11(d) specifies when the government "may" obtain title to a subject invention, the decision to demand title is a discretionary matter. Although the Board did not understand Campbell Plastics to have specifically raised the issue of whether the ACO's decision to demand title to the patent in this case is within the bounds of discretion, the Board nonetheless addressed and decided the issue. We surmise that the Board took this step because while Campbell Plastics did not phrase its contention in the language of abuse of discretion, it clearly argued that when the government obtains a license to the patent and is not otherwise harmed, the penalty of forfeiture of title is unwarranted.

In deciding the abuse of discretion issue, the Board properly considered (1) evidence of whether the government official acted with subjective bad faith; (2) whether the official had a reasonable, contract-related basis for his decision; (3) the amount of discretion given to the official; and (4) whether the official violated a statute or regulation. See McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1326 (Fed. Cir. 1999) (citing United States Fid. & Guar. Co. v. United States, 676 F.2d 622, 630 (Ct. Cl. 1982)). Ruling in favor of the government on each point, the Board concluded that the ACO did not abuse his discretion in demanding title to the subject invention and necessarily rejected Campbell Plastics's argument that when the government takes a license in the invention and is otherwise not harmed, the government cannot cause forfeiture of the patent.

On appeal, Campbell Plastics sharpens the argument made to the Board, arguing directly that the ACO abused his discretion by demanding title in circumstances where the government allegedly has suffered no harm. The government responds that indeed it has suffered harm from Campbell Plastics's failure to meet the notification requirements, inter alia, by putting the patent rights of the United States in foreign countries in jeopardy.

We agree with the Board that FAR 52.227-11(d) vests discretion in the government in determining whether to invoke forfeiture when an invention has not been correctly disclosed to it. We also agree that the test for abuse of discretion set forth in McDonnell Douglas is the test to be applied in this case. We hold that harm to the government is not a requirement in order for the ACO to insist on forfeiture and remain within the bounds of sound discretion. Campbell Plastics points to nothing in its contract with the Army, or in the relevant statute or its legislative history, that requires the government to show harm to itself in order to invoke the remedy of forfeiture when it is, as is the case here, otherwise warranted. Because the Board correctly applied the proper test in deciding that no abuse of discretion was committed by the ACO in demanding title to Campbell Plastics's patent, we reject Campbell Plastics's argument that an abuse of discretion occurred here.

V

Campbell Plastics failed to comply with the disclosure provisions of the parties' contract. The contract unambiguously provides that in such a case, the government may obtain title to the subject invention. The decision of the Board to deny Campbell Plastics's appeal is affirmed.

COSTS

No costs.


<u>AFFIRMED</u>