# United States Court of Appeals for the Federal Circuit

05-1393

MICHAEL W. WYNNE, Secretary of the Air Force,

Appellant,

v.

UNITED TECHNOLOGIES CORPORATION,

Appellee.

James W. Poirier, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Donald E. Kinner, Assistant Director. Of counsel on the brief was Bryan R. O'Boyle, Senior Trial Attorney, Air Force Legal Services Agency, of Arlington, Virginia. Of counsel was Robert P. Balcerek, AFMCLO/JAB, of Wright Patterson Air Force Base, Ohio.

W. Stanfield Johnson, Crowell & Moring LLP, of Washington, DC, argued for appellee. With him on the brief was David Z. Bodenheimer.

Appealed from: United States Armed Services Board of Contract Appeals

Administrative Judge Jack Delman

# United States Court of Appeals for the Federal Circuit

05-1393

MICHAEL W. WYNNE, Secretary of the Air Force,

Appellant,

v.

UNITED TECHNOLOGIES CORPORATION,

Appellee.

_____

DECIDED: August 28, 2006

_____

Before NEWMAN, Circuit Judge, CLEVENGER, Senior Circuit Judge, and SCHALL, Circuit Judge.

CLEVENGER, Senior Circuit Judge.

The Secretary of the Air Force (Air Force) appeals from the reconsideration decision of the Armed Services Board of Contract Appeals (Board) denying the Air Force's claim for a contract price reduction for a six-year, multi-billion dollar contract with United Technologies Corporation, Pratt & Whitney (UTech). See In re United Techs. Corp., ASBCA Nos. 51410, 53089, 53349, 05-1 BCA ¶ 32,860 (Jan. 19, 2005) (Reconsideration Decision). The Air Force claims that UTech furnished defective cost or pricing data in connection with both its initial price proposal and its Best and Final Offer (BAFO) for the contract, such that the Air Force was entitled to a contract price

reduction under the Truth in Negotiations Act (TINA), 10 U.S.C. § 2306(f) (1983).[1] Because we agree with the Board that the Air Force did not establish that it relied upon the defective cost or pricing data to its detriment, we affirm.

I

TINA requires that when a government contract is expected to exceed a certain value, a contractor must submit "cost or pricing data . . . [and] certify that, to the best of his knowledge and belief, the cost or pricing data he submitted was accurate, complete and current . . . ." 10 U.S.C. § 2306(f)(1). In addition, TINA requires that a contract price be "adjusted to exclude any significant sums by which it may be determined . . . that such price was increased because the contractor . . . furnished cost or pricing data which . . . was inaccurate, incomplete, or noncurrent." § 2306(f)(2). In other words, the government will be awarded a contract price adjustment when the government proves that a contractor furnished defective cost or pricing data and "the [g]overnment relied on the overstated costs to its detriment." Singer Co., Librascope Div. v. United States, 576 F.2d 905, 914 (Ct. Cl. 1978).[2] When it is determined that a contractor furnished defective data, there is a rebuttable presumption that the defective data resulted in "an overstated negotiated contract price . . . . for it is reasonable to assume that the

---

[1] TINA has undergone revision and recodification since 1984, as discussed infra. Therefore, unless otherwise indicated, we will refer to the version of TINA effective in 1983, when UTech offered the initial price proposal and the BAFO.

[2] In Singer, our predecessor court assessed a TINA claim under the 1970 version of the act. 576 F.2d at 908. That version of TINA is identical to the 1983 version of the act in all ways material to this case. See 10 U.S.C. § 2306(f)(1) (1970) ("A prime contractor . . . shall be required to submit cost or pricing data . . . and shall be required to certify that, to the best of his knowledge and belief, the cost or pricing data he submitted was accurate, complete and current . . . .").

government negotiators relied upon the data supplied by the contractor and that this data affected the negotiations." Sylvania Elec. Pros., Inc. v. United States, 479 F.2d 1342, 1349 (Ct. Cl. 1973). However, if that presumption of causation is rebutted, the government can only prevail upon proof that it relied upon the defective data to its detriment in agreeing to the contract price.

In the instant case, the Air Force sought a contract price reduction in the amount of roughly $300 million, claiming that UTech furnished defective cost or pricing data in connection with both the initial price proposal, which was made on August 17, 1983, and the BAFO, which was made on December 5, 1983. In an initial decision, the Board determined that although certain of the Air Force claims did not constitute defective cost or pricing data, UTech had made a number of undisclosed mistakes which did constitute defective cost or pricing data. Appeals of United Techs. Corp., ASBCA Nos. 51410, 53089, 53349, 04-1 BCA ¶ 32,556 (Feb. 27, 2004) (Initial Decision). The Board further determined that the Air Force had relied on this defective data to its detriment. However, the Board found that although the defective data had caused an increase in the contract price in some instances, it had caused a decrease in the contract price in other instances and that the contract price reductions to which the Air Force was entitled were exceeded by the offsets to which UTech was entitled. Consequently, the Board found that the Air Force did not prove "that it is entitled to an affirmative recovery due to appellant's defective cost or pricing data." Id., slip op. at 39.

Upon reconsideration, UTech challenged the Board's Initial Decision, arguing that the Board's reliance analysis improperly focused on the Air Force's audit of the data submitted with the initial price proposal. Reconsideration Decision, slip op. at 2-3.

UTech argued that the Air Force did not accept UTech's initial price proposal, dated August 17, 1983. Rather, the Air Force accepted UTech's BAFO, dated December 5, 1983, for the base year of the contract, Fiscal Year 1985 (FY 85), and accepted revised versions of that offer for the subsequent years of the contract, Fiscal Years 1986 - 1990 (FYs 86-90). Because each of the Air Force's claims were based upon its acceptance of the BAFO and subsequent revised offers, UTech argued that the Board's "inquiry as to causation should properly focus on whether the [Air Force] relied on the defective BAFO cost or pricing data to award the contract and to determine that the offered prices were fair and reasonable." Id., slip op. at 2.

The Board agreed with UTech, finding that it had misplaced its analysis in the Initial Decision, and that under the correct analysis the Air Force's claims failed. The Board found that the Air Force was entitled to a presumption that "the natural and probable consequence of defective cost or pricing data is to cause an overstated price." Id. slip op. at 3. However, the Board found that UTech had rebutted this presumption by demonstrating that the Air Force did not rely upon the allegedly defective cost or pricing data in agreeing to any contract price and that the Air Force had failed to meet its burden of proof, as the claimant, of showing that the defective cost or pricing data caused an increase in the contract price.

With respect to the contract price for FY 85, which was based upon the BAFO, the Board found as a matter of fact that "neither the Defense Contract Audit Agency (DCAA), the [Air Force] price analyst, the contracting officer (CO) nor the cost panel reviewed the BAFO cost or pricing data prior to award." Id. The Board found that the language in the Record of Acquisition Action (RAA) and attachments, which allegedly

showed reliance on the defective cost or pricing data, was "seriously undercut by the concession of the RAA author . . . that he did not recall reviewing any of appellant's BAFO cost or pricing data." Id. The Board also found that the RAA did not discuss any specific BAFO cost or pricing data relied upon by the Air Force price analyst or the cost panel. In addition, the Board found that the Air Force failed to provide evidence indicating that the BAFO data was reviewed by any government person prior to award. Although the Air Force price analyst and the CO testified that they relied on the fact that the BAFO data furnished by appellant were current, accurate, and complete, the Board found that "this testimony--given roughly 17 years after the fact--was lacking in specificity and was unpersuasive." Id. Noting that "[w]e are hard pressed to understand how the AF could have relied on BAFO cost or pricing data--defective or otherwise--that no one reviewed[,]" the Board concluded that the Air Force had not shown reliance upon the defective cost or pricing data, and that "it failed to show that appellant's defective BAFO cost or pricing data caused an increase in contract price for the base year of the contract." Id.

With respect to the contract price for FYs 86-90, the Board noted that the Air Force did not exercise its contract options under the same terms and conditions contained within the BAFO, but instead sought more advantageous offers from UTech and a competitor each year. For each of these years, the CO stated in a memorandum that that UTech's revised offer was "the most fair and reasonable" based on "a market test between the competitors." Id., slip op. at 4 (internal quotations omitted). Further, the Board noted that the CO for FYs 86-90 did not review the BAFO cost or pricing data at any time, but rather relied on the predecessor CO and the RAA, which the Board had

already found did not rely on the defective cost or pricing data. Thus, the Board found that "competitive forces, rather than the defective 1983 BAFO cost or pricing data were relied upon to make the awards and to exercise the options for additional purchases for FYs 86-90," such that the Air Force "failed to show that appellant's defective data caused an increase in the contract price for these years." Id., slip op. at 5.

Thus, the Board held that the Air Force could not recover on any of its TINA claims, as it failed to establish reliance upon the allegedly defective cost or pricing data. As a result, the Board declined to address the Air Force's motion for reconsideration on its denied claims, in which the Air Force alleged that the Board erred in the Initial Decision when it found that certain of its claims did not constitute defective cost or pricing data. Id., slip op. at 5-6 n.3.

The Air Force appeals the Reconsideration Decision, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10) (2000).

II

The Contract Disputes Act ("CDA"), 41 U.S.C. § 609(b) (2000), governs this court's review of Board decisions. While the CDA provides for nondeferential review of the Board's legal conclusions, it specifies that the Board's factual findings shall be final and conclusive unless they are "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." Id.; see Campbell Plastics Eng'g & Mfg., Inc. v. Brownlee, 389 F.3d 1243, 1246 (Fed. Cir. 2004).

The issue before this court is whether the Board erred in the Reconsideration Decision. On appeal, the Air Force does not contest any of the factual findings

05-1393                              6

underlying the Reconsideration Decision, but instead claims that the Board applied the law incorrectly. In particular, the Air Force argues that it is never necessary to establish that it relied upon the defective cost or pricing data to its detriment, as it is sufficient to establish that the contract price offered by UTech was calculated using the defective cost or pricing data.

We disagree. Section 2306(f) of Title 10 requires modification of a contract price where "such [contract] price was increased because the contractor . . . furnished cost and pricing data which . . . was inaccurate, incomplete, or noncurrent." As we noted in Singer, "[t]he ultimate question . . . is whether [the contractor] adequately disclosed to the Government the 'accurate, complete, and current' . . . costs . . . . [and] whether the Government relied on the overstated costs to its detriment." 576 F.2d at 914 (emphasis added). In other words, a contract price has been increased by defective cost or pricing data when the government relied on the defective data to its detriment in agreeing to the contract price.

That reliance on defective data is a necessary element of a TINA claim was reinforced by this court's decision in Universal Restoration, Inc. v. United States, in which we found that the government could not recover on its TINA claim, even though the contract price was calculated using defective data. 798 F.2d 1400, 1402, 1406 (Fed. Cir. 1986) (holding that government could not recover under TINA even though billings were "calculated on the basis of the 115% markup for overhead" and the court "[a]ccept[ed] as correct that Universal's overhead rate was in fact lower than 115%"). In that case, we held that the presumption that defective cost or pricing data caused an increase in contract price was rebutted when the contractor demonstrated that it would

05-1393                                                     7

not have accepted a lower contract price than the price calculated using the defective data. Id. at 1406 ("If Universal would accept no less . . . there would have been no contract, not a contract at a lower price. The conclusion is inescapable that [the defective data] . . . did not affect the agreed-upon contract price."). Much like the Air Force in the instant case, the government "relied solely on the presumption that nondisclosure resulted in an overstated contract price . . . ." Id. Once the presumption of causation had been rebutted, the government failed to furnish additional arguments or evidence showing that it relied upon the defective cost or pricing data to its detriment. As a result, its TINA claim failed. Id.

The Air Force cites to Sylvania and Lockheed Aircraft Corp., Lockheed-Georgia Co. Division v. United States, 432 F.2d 801, 806 (Ct. Cl. 1970), for the proposition that "the causation element of TINA may be established merely by demonstrating a causal link between the defective data and the final contract price."[3] Appellant's Br. at 45-46. However, in Sylvania, we found that this causal link was established because the contractor failed to rebut the presumption that "the government negotiators relied upon the data supplied by the contractor and that this data affected the negotiations." 479 F.2d at 1349. Thus, we affirmed the Board's factual finding that the government relied upon the inaccurate data. Id. Similarly, in Lockheed, we found that the requisite causal link existed because, in agreeing to the contract price, the government had relied

---

[3]     The Air Force also cites to M-R-S Manufacturing Co. v. United States, 492 F.2d 835, 841 (Ct. Cl. 1974), in support of its argument. However, M-R-S Manufacturing does not address whether reliance upon defective data is a necessary element of a TINA claim. Instead, it discusses what data must be disclosed to the government and whether the government may waive such disclosure. Here, UTech argues not that the Air Force waived the disclosure requirements, but rather that the Air Force has not established that any failure to disclose actually caused it harm.

05-1393                              8

upon its own audit, which had in turn relied upon the defective pricing. 432 F.2d at 806 ("Whether the Air Force thus relied on its own audit, as opposed to Midwestern's records, is immaterial. . . . [The] Air Force audit was based on the information in the Kardex file, which we have found to be deficient when measured against the requirements of the Defective Pricing Clause . . . .").[4] Thus, in both Sylvania and Lockheed, this court found that the government had relied upon the defective cost or pricing data at issue.

Indeed, in 1986, Congress considered and rejected amendments to TINA that would have eliminated the reliance requirement. The legislative history of the 1986 amendments recognized that, as the law stood, the government could not recover on a TINA claim if it did not rely on the allegedly defective cost or pricing data to its detriment:

> Existing law has been interpreted to require that, in order to recover under TINA, the contractors' failure to disclose must have resulted in the government's being misled into agreeing to a price greater than it would have agreed to had the correct information been provided. Accordingly, if a contractor proves that the government did not rely on the cost and pricing data submitted by the contractor or that, even if it had known the correct information, the government would not have been able to negotiate a better price, the government could not recover.

H.R. Rep. No. 99-718, at 260 (1986) (emphases added). The proposed bill would have changed the rebuttable presumption of reliance upon defective pricing data into a conclusive presumption of reliance. Acquisition Reform - 1986: Hearing on H.R. 4548

---

[4] Although the Air Force audited UTech's initial price proposal, the Air Force did not demonstrate any causal link between the BAFO and the initial price proposal. Indeed, the Air Force does not challenge the Board's factual finding that the BAFO was accepted without regard to the allegedly defective cost or pricing data. Reconsideration Decision, slip op. at 4-5.

Before the H. Acquisition and Procurement Policy Panel of the Armed Servs. Comm., 99th Cong. 444-45 (1986) (statement of Mr. Vander Schaaf, Deputy Inspector General, Department of Defense) (proposing changing TINA to read that "[i]t shall be conclusively presumed that the Government relied on all cost or pricing data furnished by the contractor . . . .") (emphasis added).

However, Congress rejected the proposed amendment; rather than altering TINA to create a conclusive presumption of reliance, Congress codified the reliance requirement as a defense to a TINA claim. National Defense Authorization Act for Fiscal Year 1987, Pub. L. No. 99-661, § 952, 100 Stat 3816, 3945-49 (codified at 10 U.S.C. § 2306a(d)(2) (1986)). Thus, as of 1986, TINA explicitly stated that "[i]n determining for purposes of a contract price adjustment . . . whether, and to what extent, a contract price was increased because the contractor (or a subcontractor) submitted defective cost or pricing data, it shall be a defense that the United States did not rely on the defective data submitted by the contractor or subcontractor." 10 U.S.C. § 2306a(d)(2) (1986) (current version at 10 U.S.C. § 2306a(e)(2)).

In short, the Air Force was entitled to a rebuttable presumption that any defective cost or pricing data affected its agreement to the contract price and thus actually caused an increase in the contract price. However, once UTech rebutted this presumption of causation, the Air Force was required to establish that it actually relied on the defective data to its detriment. The Air Force did not assert any additional evidence or arguments establishing such reliance before either the Board or this court. Thus, the Reconsideration Decision was not in error.

Finally, the Air Force argues that the Board erred in finding that UTech had rebutted the presumption that the defective data caused an increase in the contract price. However, the Air Force does not attack the factual underpinnings of the Board's decision, and the Air Force does not argue that it did rely upon the defective cost or pricing data when it accepted the BAFO or any subsequent offers. Rather, the Air Force argues that the presumption cannot be rebutted in an instance in which the allegedly defective data was used in calculating the contract price. That argument is foreclosed by Universal Restoration, where we found the presumption of causation rebutted even though the defective data was used in calculating the contract price. 798 F.2d at 1402, 1406. Thus, the Air Force has not demonstrated that the Board erred in finding that UTech successfully rebutted the presumption of causation.

The Board's Reconsideration Decision is affirmed.

AFFIRMED