# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of -- )
)
BAE Systems Tactical Vehicle Systems LP ) ASBCA Nos. 59491, 60433
)
Under Contract No. W56HZV-08-C-0460 )

APPEARANCES FOR THE APPELLANT: David Z. Bodenheimer, Esq.
Brian Tully McLaughlin, Esq.
Skye Mathieson, Esq.
 Crowell & Moring LLP
 Washington, DC

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
 Army Chief Trial Attorney
CPT Harry M. Parent III, JA
Robert B. Neill, Esq.
MAJ Julie A. Glascott, JA,
 Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE O'SULLIVAN
## ON THE GOVERNMENT'S MOTION TO STAY OR ALTERNATIVELY
## TO SUSPEND PROCEEDINGS

These appeals contest a government claim that appellant, BAE Systems Tactical Vehicle Systems LP (BAE TVS), provided defective cost or pricing data to the Army in connection with 2008 negotiations to definitize a contract award for 10,000 military trucks and trailers known as the Family of Medium Tactical Vehicles (FMTV). The amount claimed by the government in a contracting officer's final decision (COFD) dated 15 July 2014 is $56,386,953 (net of accepted offsets) plus interest. (R4, tab 240 at 1) On 14 August 2014, the Board docketed BAE TVS's appeal from the COFD as ASBCA No. 59491. On 2 February 2016, the Board docketed BAE TVS's appeal from the contracting officer's (CO's) deemed denial of its revised offset proposal as ASBCA No. 60433.

On 28 March 2016, the government moved the Board to stay or alternatively suspend proceedings due to the pendency of a civil False Claims Act case in the federal district court for the Eastern District of Michigan. *United States v. BAE Systems Tactical Vehicle Systems, LP*, No. 15-CV-12225 (E.D. Mich.). The parties had completed written discovery in the Board proceedings and were engaged in taking depositions at the time the motion was filed. The Board suspended the remaining depositions through 31 July 2016 to allow time to decide the government's motion, but retained the existing dates for

the hearing, which is scheduled to commence 17 January 2017. Briefing on the government's motion was completed at the end of May, 2016.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

Contract No. W56HZV-08-C-0460 (the contract) was awarded to BAE TVS on 30 May 2008 by the U.S. Army TACOM LCMC, Warren, Michigan, as an undefinitized contractual action to procure FMTV vehicles (8,400 trucks and 1,600 trailers), 10,000 additional option vehicles and supporting kits, systems tactical support, and testing requirements. The current total value of the contract is $4,087,745,756.09. (R4, tab 1 at 1; answer ¶ 6) BAE TVS and its predecessor companies delivered FMTV vehicles under contract with the Army from the inception of the program (1991) through the last vehicle delivery in December 2013 (compl.[1] and answer ¶ 7). During the period 2006-2010, FMTV production rates rose to unprecedented levels due to the wars in Iraq and Afghanistan, and emerging threats from mines and improvised explosive devices led to major configuration changes, which in turn caused many engineering change proposals and unpriced contractual actions. (Compl. and answer ¶ 8)

The Defective Pricing Allegations

After the May 2008 award of the FMTV contract, the Army and BAE TVS commenced price negotiations, which were concluded on 22 September 2008. On 24 September 2008, BAE TVS executed a Certificate of Current Cost or Pricing Data stating that the cost or pricing data it provided the government during price negotiations were current, accurate, and complete as of 4 September 2008 (the effective certification date). (R4, tab 240 at 2) On 15 July 2014, following a post-award audit by the Defense Contract Audit Agency (DCAA), the Army CO issued a final decision finding defective pricing with respect to the FMTV contract and demanding repayment in the amount of $56,386,953 plus interest (*id.* at 1). The areas of defective pricing found were:

> *Vendor Quotations*—$23,429,251 price adjustment. DCAA determined that BAE TVS received updated quotations for 40 different part numbers up to and including 4 September 2008 but failed to disclose these updated quotations to the government. (*Id.* at 2)

> *Purchase Orders*—$1,096,164 price adjustment. DCAA determined that, prior to 4 September 2008, BAE TVS issued purchase orders to vendors for 11 parts at lower prices than disclosed to the government. (*Id.* at 3)

---

[1] All references to appellant's complaint herein are to its original complaint, filed 16 September 2014.

2

*Currency Exchange Rates*—$1,862,823 price adjustment. DCAA determined that BAE TVS did not use the most current exchange rate (USD to Euro) in the costs proposed with respect to two part numbers. BAE TVS used a rate of 1.5846 in its costs proposed in April of 2008. In August 2008 it had checked exchange rates online, at which time the rate was 1.467220, but it did not update the proposed costs for the two parts. (*Id.*)

*FABSHOP Rates*—price adjustment of $11,332,322. DCAA found that BAE TVS had not updated its proposed prices for 215 parts that BAE TVS planned to manufacture in house to reflect the labor rates agreed on in a recently finalized forward pricing rate agreement (FPRA). (*Id.*)

*Historical Data*—price adjustment of $227,523. DCAA found that BAE TVS did not disclose the most "relevant" historical data with respect to one part called a thrust washer, namely a purchase order issued before the certification date at a unit price considerably below BAE TVS's proposed unit prices for the part. (*Id.* at 3-4)

*Parts Proposed in Excess of Contract Requirements*—price adjustment of $12,427,129. DCAA reviewed engineering drawings that called out quantities of parts needed for the contract and determined that some of the parts proposed by BAE TVS were not required and others were required in a quantity less than that proposed. (*Id.* at 4)

*Related Overhead and General and Administrative (G&A) Expense, Cost of Money and Profit Applicable to Defectively-Priced Direct Material*—additional adjustment of $11,271,709, computed by applying the specified rates to the total of $50,375,212 in alleged defectively priced direct material. (*Id.*)[2]

BAE TVS contests the government's defective pricing allegations in the following major respects: *first*, it contends that DCAA (and the CO, who adopted DCAA's determinations) used the wrong bill of material (BOM) as the baseline for the defective

---

[2] The resulting total of $61,646,921 was reduced by $5,259,968 of accepted offsets to match the claimed amount of $56,386,953 (R4, tab 240 at 1).

3

pricing allegations. While DCAA used a BOM dated 11 September 2008 (which was generated after the effective certification date of 4 September 2008), it should have used the BOM generated when BAE TVS, at the direction of the CO, conducted a "sweep" of cost or pricing data that concluded on 24 September 2008 and incorporated the data from the sweep into a superseding BOM (hereinafter the "sweep BOM") that was disclosed to the Army by uploading it on 24 September 2008 to a file transfer protocol (FTP) website used to share data with the Army during price negotiations (compl. ¶¶ 13, 25-26, 50-53).

*Second*, BAE TVS contends, specifically with respect to the government's allegations regarding undisclosed more recent quotations and purchase orders showing lower prices, that (a) the government relies on vendor quotations and purchase order prices that are the same as, or higher than, the prices in the sweep BOM; (b) the government relies on quotations from unqualified vendors; and (c) the government relies on quotations received after the certification date (compl. ¶¶ 54-56).

*Third*, BAE TVS asserts that the government's defective pricing allegations with respect to the foreign exchange rate must fail, because, *inter alia*, the government had as much access to the publicly available foreign exchange rates as BAE TVS did, and a contractor is not required to use any particular data in its proposal (compl. ¶¶ 62-66).

*Fourth*, with respect to the FABSHOP labor rates, BAE TVS asserts, *inter alia*, that the Army was not only aware of the updated rates, but (a) used them prior to the 4 September 2008 certification date in negotiating prices for engineering change proposals and individual parts on other contracts; and (b) proposed price reductions to FABSHOP parts after receiving the new rates, which reductions were accepted by BAE TVS (compl. ¶¶ 74, 80).

*Fifth*, BAE TVS asserts that the lower purchase order price for the thrust washer that DCAA relies on for its "historical data" defective pricing allegation was incorporated into the 24 September 2008 sweep BOM (compl. ¶ 90).

*Sixth*, with respect to the allegation that the contractor's BOM contained overstated quantities of parts, BAE TVS contends that the Army controlled the FMTV configuration and had actual knowledge of required quantities, that quantity errors in any event may not qualify as defective pricing, and that the government has not identified with any specificity what cost or pricing data was "defective" or cited to any errors in quantities in the underlying engineering drawings or other cost or pricing data (compl. ¶¶ 98-100, 103-05).

4

In addition, BAE TVS has put forth a revised offset proposal[3], submitted on 5 September 2014, which totals $65,832,826, and exceeds the government's claimed price reduction (compl. ¶¶ 128-29).

## The False Claims Act Litigation

In November of 2014, BAE's outside counsel in the Board proceedings was contacted by Department of Justice (DOJ) attorneys who informed him that they were initiating an investigation into the pricing and negotiation of the FMTV contract and requested that BAE TVS enter into an agreement tolling the running of the applicable statute of limitations ("tolling agreement") (app. opp'n to gov't mot. for stay, declaration of Joseph C. Port, Jr. ¶ 5). In a conference call on 3 December 2014, DOJ informed counsel for BAE that they were at the very beginning stages of the investigation and were focusing on the same set of facts that gave rise to the Board proceedings (*id.* ¶ 6). BAE TVS agreed to enter into a tolling agreement for three months, which was subsequently extended another three months (*id.* ¶ 7).

On 6 March 2015, DOJ counsel emailed to counsel for BAE a list of documents that would subsequently be subpoenaed by the DoD Inspector General (Port decl. ¶ 9, ex. 3). BAE TVS received the subpoena on 13 May 2015 and produced responsive documents on 19 May 2015 (*id.* ¶¶ 11, 14). On 28 May 2015, DOJ acknowledged receipt of the documents and requested a further extension of the tolling agreement, which BAE TVS declined on 2 June 2015 (*id.* ¶¶ 15, 18). On 18 June 2015, DOJ filed its False Claims Act complaint in the federal district court and requested a jury trial (app. opp'n, ex. 3). On 9 March 2016, that court issued a decision granting in part and denying in part BAE's motion to dismiss the government's first amended complaint. *United States v. BAE Systems Tactical Vehicle Systems, LP*, No. 15-CV-12225, slip op. (E.D. Mich. March 9, 2016) (gov't mot., ex. 4).[4] Thereafter, the government filed its motion for stay in these proceedings.

## The Parties' Contentions

The government's motion requests that the Board stay or suspend proceedings in these appeals until the False Claims Act case (FCA case) is resolved, or alternatively, that

---

[3] Pursuant to the Truth in Negotiations Act (TINA), 10 U.S.C. § 2306a, a contractor may "offset" the government's claim for a price reduction with data available before the certification date showing understated prices. *See, e.g.,* 10 U.S.C. § 2306a(e)(4)(A).

[4] The court dismissed Count III of the government's first amended complaint, with the government's concurrence, since it cited an inapplicable section of the FCA. The court found, with respect to the remainder of the complaint, that the government had adequately pled its FCA claims.

the appeals be dismissed without prejudice to refiling within 12 months of the resolution of that case. In support of its motion, the government appends substantially identical letters from the United States Attorney for the Eastern District of Michigan and the Director, Commercial Litigation Branch (Fraud Section), Civil Division, U.S. DOJ, which assert that further proceedings before the Board will interfere with the prosecution of the FCA case (gov't mot., exs. 2, 3). Specifically, the letters state that litigation of essentially the same facts and legal issues in the two forums would result in the needless expenditure of time and effort by the parties and the Board, and that since both actions involve intertwined facts and legal issues, litigation in both forums could result in conflicting decisions (*id.*).

Also appended in support of the government's motion is the declaration of Donald J. Williamson, senior trial counsel with DOJ's Fraud Section, who asserts that the significant overlap between the facts, legal issues, and evidence in the two proceedings risks inconsistent decisions. He offers as an example: "If the Board were to conclude that...BAE had reasonably disclosed its cost or pricing data to the government, such a determination would conflict with any finding by the district court that BAE...in fact, withheld from disclosure to [the Army] cost or pricing data that it knew of, thereby knowingly submitting false claims." (Gov't mot., Williamson decl. ¶ 15)

The government asserts that the Board should exercise its discretion to grant a stay because the appeals before the Board involve the same parties, the same "landscape of facts," and many of the same witnesses and issues, but the government "intends to develop a broader factual record, in both discovery and trial, than BAE will develop in this appeal" (gov't mot. at 13). In addition, the FCA case involves the additional element not before the Board whether BAE TVS "knowingly" provided a false certification and is therefore liable for double damages as well as forfeiture of its offsets (*id.* at 13-14). And while the witnesses are largely the same, the government intends to seek testimony from BAE TVS's suppliers, some of which are located overseas, "in order to support its assertions regarding what and when BAE knew about its costs" for material (*id.* at 14). Thus, the government concludes, the district court is the more efficient forum in which to adjudicate all the issues.

The government argues that it will experience substantial prejudice if the ASBCA case proceeds. It states that it intends to develop facts that relate to fraud that it presumably will not be able to pursue in the Board action, and it will be hamstrung in presenting a "defense" to BAE's "claims" because the Board cannot make findings of fraud. (Gov't mot. at 15, Williamson decl. ¶¶ 19-20) In addition, the government is concerned it will be unduly burdened if depositions resume (the government anticipates BAE will wish to take up to six more depositions and the government anticipates taking five) because the witnesses will not be able to consider documents and information that the government will be seeking in discovery from BAE and other parties in the FCA action and therefore may have to be deposed twice (gov't mot. at 16).

6

Appellant counters that in this case, the similarity of facts, issues, and witnesses counsels against a stay. It points out that the government concedes in its motion (at 9-11) that the threshold issue in both cases is whether BAE TVS failed to disclose current, accurate, and complete cost or pricing data, and that this is a "foundational issue" that is within the Board's subject matter expertise (app. opp'n at 8-9). With respect to prejudice to the government, appellant states that both parties have already obtained substantial discovery in the Board proceeding and have agreed that depositions taken in the Board proceeding may be used in the FCA case, so that discovery in the Board proceeding, far from impeding the FCA case, is valuable to it (*id.* at 11). It points out that the government has been pursuing both cases since June of 2015 and DOJ attorneys have been pursuing their investigation since November of 2014 and have attended all depositions taken in the Board proceeding, without any claim of undue burden (*id.* at 13). However, despite the extensive discovery that has already taken place in the Board proceeding and the DOJ investigation, appellant notes the government has not identified a single fact that it would be unable to use in the Board proceeding or that would warrant a stay thereof (*id.* at 12). Thus, appellant concludes that the Board should proceed to decide the foundational issues of defective pricing common to both cases, which will have equal preclusive effect on both parties.

Predictably, the parties also disagree on whether appellant would be prejudiced by a stay. The government states that a stay would allow BAE to litigate the full range of factual and legal issues in the FCA case without having to litigate in two different forums (gov't mot. at 13). BAE TVS counters that it is entitled to have its properly asserted appeal litigated before and decided by the Board, and that because the dispute stems from events that happened up to eight years ago, witnesses are already having difficulty recalling events and the government is having difficulty locating and producing documents. The further passage of time will only exacerbate this problem. (App. opp'n at 14-15)

Considerations of judicial efficiency similarly lead the parties to advocate for opposite outcomes. The government argues that considerations of comity and judicial efficiency favor a stay because the Board and the court would inevitably be required to engage in duplicative procedures and evaluations costly to all (gov't mot. at 19 (citing *Government Business Services Group, LLC*, ASBCA Nos. 54588, 54973, 05-2 BCA ¶ 33,059)). The government disagrees with appellant that the foundational issue in both cases is within the Board's expertise and argues that the foundational issue is fraud, which the Board cannot decide (gov't reply at 6).

Appellant for its part argues that there can be no fraudulent defective pricing without defective pricing, which is the foundational issue and, as to which, between a federal jury and the Board, the Board has unmatched expertise (app. surreply at 3-4). Appellant also asserts that the potential for conflicting findings is low, since the proceedings are not really parallel: discovery has not yet commenced in the FCA case and no trial date has been set, whereas discovery is well underway in the Board

7

proceeding and trial is set for January 2017. Appellant further points out that DOJ has indicated it will engage in international and third-party discovery in the FCA case, which is likely to take more than a year once discovery does commence. (App. opp'n at 8-10)

## DECISION

The Board has inherent authority to stay its proceedings. In exercising this authority in connection with parallel proceedings, we "weigh competing interests and maintain an even balance." *Palm Springs General Trading and Contracting Establishment*, ASBCA No. 56290 *et al.*, 10-1 BCA ¶ 34,406 at 169,867 (citing *Public Warehousing Company, K.S.C.*, ASBCA No. 56116, 08-1 BCA ¶ 33,787 at 167,226). In exercising our discretion, we recognize that, under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, "a contractor is entitled to have a properly asserted appeal litigated before, and decided by, the Board." *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 56358, 57151, 11-1 BCA ¶ 34,614 at 170,603 (citing *TRW, Inc.*, ASBCA Nos. 51172, 51530, 99-2 BCA ¶ 30,407 at 150,332). Under the CDA, we have a statutory mandate to provide "informal, expeditious, and inexpensive resolution" of contract disputes. 41 U.S.C. § 7105 (g)(1).

The factors normally considered by the Board include: (1) whether the facts, issues, and witnesses in both proceedings are substantially similar; (2) whether the on-going investigation or litigation could be compromised by going forward with the case before us; (3) the extent to which the proposed stay could harm the non-moving party; and (4) whether the duration of the requested stay is reasonable. *Public Warehousing*, 08-1 BCA ¶ 33,787 at 167,227; *Kellogg Brown & Root*, 11-1 BCA ¶ 34,614 at 170,603. Where "there is even a fair possibility" that a stay will work damage to the non-movant, the government must demonstrate a "clear case of hardship or inequity in being required to go forward." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

We also ask whether consideration of "[j]udicial efficiency counsels granting the stay." *Kaman Precision Products, Inc. formerly dba Kaman Dayron, Inc.*, ASBCA No. 56305 *et al.*, 10-2 BCA ¶ 34,499 at 170,153.

## Similarity

The government's first amended complaint in the FCA case alleges violations of the FCA and TINA, as well as breach of contract, unjust enrichment, and payment by mistake. Both parties agree that the facts relevant to both cases are nearly completely overlapping and that the two cases will require examination of common documents and witnesses and eventually a judgment as to whether defective pricing occurred. An additional element present in the False Claims Act case is whether, if defective pricing occurred, BAE TVS did it *knowingly*. (Gov't reply at 1; app. reply at 2-4) Other

8

element(s) that are part of a FCA case but not before us in the Board proceeding are presentment of a false or fraudulent claim and/or the making of a false statement or record in support of such a claim. 31 U.S.C. § 3729 (a)(1)(A), (B).

There are additional differences. In the FCA case, as the government has stated, it will seek to expand the scope of discovery and trial to include testimony from BAE suppliers, some of whom are located overseas, to support its allegations regarding "what and when BAE knew" about its material costs (gov't mot. at 14). Indeed, the government was forced to file the FCA suit prior to completion of its investigation because BAE TVS declined to further extend the tolling agreement,[5] and it is therefore at least conceivable that further discovery in that case will lead to additional fraud allegations independent of the government's defective pricing allegations in the case before us. Moreover, while BAE TVS argues that the government cannot prove fraudulent defective pricing without defective pricing, we do not agree that a finding of defective pricing is necessarily "foundational" to the government's fraud case. For instance, while government reliance on defective cost or pricing data is an essential element of the government's case under TINA, the government need not prove such reliance in its FCA case to prove that a false or fraudulent claim was presented (although reliance could still be relevant to damages).

Because of these distinctions, we do not think that such similarity as currently exists counsels for a stay in the present circumstances. Rather, we find persuasive the reasoning of *Kellogg Brown & Root* cited above. In that case we had before us the contractor's claims for reimbursement of private security costs incurred by it and one of its subcontractors in the performance of the LOGCAP III contract in Iraq and Kuwait. The Army moved for an indefinite stay of the ASBCA proceedings until the resolution of an FCA lawsuit which alleged that the contractor had submitted false and fraudulent claims for payment of prohibited private security costs incurred by it and more than 30 of its subcontractors. We weighed the contractor's right to have a properly asserted appeal litigated before and decided by the Board against the lack of any evident compelling reason that KBR should stand aside while the district court adjudicated the government's claims with respect to more than 30 of its subcontractors. We also saw no reason why KBR should be stopped from proceeding before the ASBCA to wait for adjudication of issues unique to FCA liability but not relevant to contract liability in the appeals. *Kellogg Brown & Root*, 11-1 BCA ¶ 34,614 at 170,603, *see also TRW*, 99-2 BCA ¶ 30,407 at 150,332, where the contractor sought declaratory relief with respect to its treatment of certain costs that were also the subject of an FCA lawsuit. We denied the government's motion for stay in *TRW*, observing that the issues in the court and Board proceedings were not identical and that the underlying merits of the correctness of TRW's treatment of indirect costs under the contract was within our

---

[5] Upon BAE's declination, DOJ counsel sent an email stating that "BAE's decision leaves us with no choice but to promptly file a timely complaint" (Port decl., ex. 8).

9

statutory mandate. *TRW*, 99-2 BCA ¶ 30,407 at 150,332. In these appeals, we are presented with the issue of whether the government has correctly claimed that BAE TVS did not meet its contractual duty to disclose current, accurate, and complete cost or pricing data. This is an issue that is within our expertise and our statutory mandate and we think that BAE TVS is entitled to our decision on the matter.

Balancing of the Harm

We are guided in balancing the harm to the government should a stay be denied against the harm to the appellant if a stay should issue by the words of Justice Cardozo in *Landis*: "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." 299 U.S. at 255, *see also TRW*, 99-2 BCA ¶ 30,407 at 150,332; *Kellogg Brown & Root*, 11-1 BCA ¶ 34,614 at 170,603.

We do not find that the government has demonstrated "a clear case of hardship or inequity in being required to go forward." At most, it has speculated that the Board and the court could reach inconsistent findings, or that witnesses may have to be deposed again should the government uncover facts presently unknown to it through discovery in the FCA case. We do not find this speculation to be compelling. Moreover, given that substantial discovery has already taken place in the appeals before us and trial is set for January 2017, while the schedule in the FCA case is uncertain,[6] it is somewhat likely that the Board's decision will precede the trial in the FCA case. If this occurs, the district court will of course accord to the Board's decision only that preclusive effect which it deems appropriate.[7]

---

[6] The district court's docket indicates that the scheduling conference has been re-set for August 2016. No trial date has been set. Discovery, when it commences, is likely to take longer than it has at the Board due to the government's plan to seek international discovery. Thus, it is likely that trial in the FCA case will lag behind trial in the Board case by more than a year.

[7] The preclusive effect of a Board decision in a defective pricing case upon a FCA suit was extensively discussed in *United States v. United Technologies Corp.*, 782 F.3d 718 (6th Cir. 2015). In that case, the ASBCA had issued a decision on reconsideration in 2005, finding that the government had failed to establish that it relied on defective cost or pricing data. *United Technologies Corp.*, ASBCA No. 51410 *et al.*, 05-1 BCA ¶ 32,860, *aff'd, Wynne v. United Technologies Corp.*, 463 F.3d 1261 (Fed. Cir. 2006). In deciding the second appeal in a related FCA case that remained unresolved after 17 years (the complaint was filed in 1999), the court of appeals found that the Board's 2005 decision did not preclude the district court from considering whether the government suffered damages as a result of misrepresentations made by the contractor in 1983. 782 F.3d at 726-30.

10

In addition, although the government has expressed concern about issues with respect to the proper scope of discovery (gov't mot. at 16), the parties have cooperated in the conduct of discovery in these appeals up to this point, and have not given us any reason to believe that they will not be able to resolve any issues that may arise in the future as between the two proceedings.

As for harm to BAE TVS, it has expressed concern that the passage of time since the events in question occurred (2008) has already adversely affected witnesses' memories and the government's ability to locate documents. We have recognized the harm that may be suffered from a hiatus of any length in terms of the loss of witnesses and evidence. *Suh'dutsing Technologies, LLC*, ASBCA No. 58760, 15-1 BCA ¶ 36,058 at 176,083. In this case, the government has not represented that the stay will be of any duration other than indefinite. The risk of loss of witnesses and evidence, in addition to the deprivation of its right to an expeditious and inexpensive adjudication of a contract dispute by the Board, is sufficient to constitute a "fair possibility that the stay" will harm BAE TVS.

## Judicial Efficiency

Given the considerations and conclusions above, we believe judicial efficiency is best served by proceeding with the appeals before us. The government has chosen to pursue claims against BAE TVS under both the Truth in Negotiations Act and the False Claims Act. BAE TVS has chosen to appeal, as is its right under the CDA, the government's claim under TINA to the Board. We think on balance that proceeding with the litigation before us is likely to lead to an earlier resolution of the contract claims which, in turn, may have the effect of simplifying and streamlining the issues to be decided in the FCA action.

## Reasonableness of the Duration of the Requested Stay

"[A] stay of indefinite duration in the absence of a pressing need" is an abuse of discretion. *Landis*, 299 U.S. at 255; *Kellogg Brown & Root*, 11-1 BCA ¶ 34,614 at 170,604; *Suh'dutsing Technologies*, 15-1 BCA ¶ 36,058 at 176,083. We have not found a pressing need, and thus the length of the requested stay is unreasonable.

11

## CONCLUSION

The government's motion to stay or alternatively to suspend proceedings is denied. The temporary stay imposed by the Board to allow time to decide the government's motion is hereby lifted.

Dated: 25 July 2016

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59491, 60433, Appeals of BAE Systems Tactical Vehicle Systems LP, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

12